MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Patricia Howell was injured after falling from an x-ray table at Garden Park Community Hospital. Howell fried suit as a result of her injuries, but the trial court granted Garden Park’s motion to dismiss, finding that the suit was a medical malpractice action and the two-year statute of limitations applied. Howell now appeals the dismissal of the complaint. Howell contends that the trial court erred as follows: (1) in granting summary judgment based on its determination that the case fell under the malpractice statute of limitations, (2) in granting summary judgment when genuine issues of material fact still existed, (3) in granting summary judgment by determining that the action was for malpractice rather than a result of Garden Park’s failure to inspect and maintain the x-ray table, and (4) in granting summary judgment because the action fell under malpractice rather than ordinary negligence. These issues have been combined in the interest of judicial economy to the singular issue of whether the suit was properly dismissed based on the finding that the applicable statute of limitations had expired.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On October 10, 2003, Howell arrived at Garden Park to undergo several ordered tests, including a series of cervical x-rays. Howell was fully reclined on her back on the x-ray table in preparation for the procedure. The medical technician then pressed a control knob that caused the table to shift downward. This unexpected
 
 *902
 
 shift forced Howell off the table headfirst onto the floor before the technician was able to prevent her fall. The fall caused injuries to Howell.
 

 ¶ 3. Howell filed suit against Garden Park on October 6, 2006, alleging general negligence. Garden Park answered and asserted several defenses to the suit, one being that Howell had failed to pursue her claim within the time limits provided by Mississippi Code Annotated section 15 — 1— 36(1) (Rev.2003), which requires, in relevant part, that a suit against a “hospital ... for injuries or wrongful death arising out of the course of medical, surgical or other professional services [to be] filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.” The trial court granted Garden Park’s motion to dismiss on the grounds that the two-year statute of limitations recited in Mississippi Code Annotated section 15-1-36 had already expired. It is from that dismissal that Howell seeks redress.
 

 STANDARD OF REVIEW
 

 ¶ 4. This Court will review a motion to dismiss under a de novo standard.
 
 Scaggs v. GPCH-GP, Inc.,
 
 931 So.2d 1274, 1275(¶ 6) (Miss.2006). “When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.”
 
 Id.
 
 (quoting
 
 Lang v. Bay St. Louis/Waveland Sch. Dist.,
 
 764 So.2d 1234, 1236(¶ 7) (Miss.1999)). Further, the trial court’s decision will not be overturned on appeal “unless [it is] manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Id.
 
 (citing
 
 Bell v. City of Bay St. Louis,
 
 467 So.2d 657, 661 (Miss.1985)).
 

 DISCUSSION
 

 WHETHER THE TRIAL COURT ERRED IN GRANTING GARDEN PARK’S MOTION TO DISMISS, FINDING THAT THE TWO-YEAR STATUTE OF LIMITATIONS APPLIED.
 

 ¶ 5. Howell argues that this case is for ordinary negligence, which provides a three-year statute of limitations, rather than a malpractice action, which provides only a two-year statute of limitations. Howell alleges that Garden Park was negligent in failing to inspect its x-ray table and to maintain its x-ray table in a safe operating condition. Therefore, Howell contends the action falls squarely within Mississippi Code Annotated section 15-1-49(1), which provides a longer, three-year statute of limitations. Howell alleges that the trial court incorrectly based its ruling solely on the allegations of the complaint and further assumed that since she alleged malpractice, it fell only under the malpractice statute. However, Howell argues that the trial court erred in dismissing the complaint because the complaint also alleges ordinary negligence, which provides a longer statute of limitations. Howell alleges that the trial court erred in failing to pierce the pleadings and to determine whether any genuine issues of material fact existed. Howell also alleges that there is a genuine dispute as to whether the service provided by the x-ray technician met the definition of a professional service. Howell alleges that it is unclear whether professional services were in fact involved in this case because it has not been established that the services provided by the technician, operating the x-ray machine, were of a professional nature. Howell claims that no expert medical testimony was necessary to establish whether the standard of care was breached by the x-ray technician, as the case did not allege
 
 *903
 
 the operator’s breach of care in the operation of the machine. Rather, Howell argues that Garden Park failed to inspect or maintain its x-ray machine, thus causing her injuries.
 

 ¶ 6. Garden Park contends that the trial court properly applied Mississippi Code Annotated section 15-1-36 and properly dismissed the action as the statute of limitations had already expired. Garden Park alleges that Mississippi Code Annotated section 15-1-36 applies under a plain and ordinary reading of the statute. Garden Park alleges that any claim in tort arising out of professional services rendered by a hospital must be pursued within two years and that this case falls squarely within those confines. “[A] ‘professional service’ involves the application of special skill, knowledge and education arising out of a vocation, calling, occupation or employment.”
 
 Burton v. Choctaw County,
 
 730 So.2d 1, 5-6(¶ 21) (Miss.1997) (citation omitted). Garden Park argues that the two-year-limitation period applies to all torts against a licensed health-care provider, so long as the tort itself arises out of the medical or professional services rendered and is not limited to medical-negligence actions. Additionally, Garden Park contends that Howell’s claims arise out of the course of medical or other professional services, i.e., the x-ray exam she received at its facility. Garden Park claims that Howell’s injuries were causally connected to the medical or professional services she received at its facilities on October 10, 2003. Garden Park alleges that she received injuries after a medical technician, while performing the x-ray, allegedly was careless or negligent in operating the x-ray table, causing the table to slope down and Howell to fall to the floor. Garden Park argues that this fits within the plain meaning of Mississippi Code Annotated section 15-1-36(1), which again states, in part, that the action must “aris[e] out of the course of medical, surgical, or other professional services.” Garden Park contends that maneuvering the equipment and performing an x-ray requires specialized knowledge and training regarding the equipment and what areas should be x-rayed and at what angles to take the x-ray in order to make a proper diagnosis. In addition, Garden Park points out that Howell’s claim that it failed to maintain the x-ray equipment was an integral and inseparable part of the rendition of the medical treatment she received. The x-ray was ordered by her doctor as part of her treatment and care. Therefore, Garden Park maintains that its alleged negligence was inherently connected with its providing of professional services to Howell.
 

 ¶ 7. Garden Park cites to Louisiana law in support of its argument that this case should be considered malpractice. The six
 
 Coleman
 
 factors, which help determine whether a tort action falls under the Louisiana Medical Malpractice Act, are listed as follows:
 

 [1] whether the particular wrong is “treatment related” or caused by a dereliction of professional skill,
 

 [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,....
 

 [3] whether the pertinent act or omission involved assessment of the patient’s eondition[,]
 

 [[Image here]]
 

 [4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
 

 [5] whether the injury would have occurred if the patient had not sought treatment, and
 

 [6] whether the tort alleged was intentional.
 

 
 *904
 

 Coleman v. Deno,
 
 813 So.2d 303, 315-16 (La. Jan.25, 2002).
 

 ¶ 8. Using the six
 
 Coleman
 
 factors for guidance, this claim fits squarely under Mississippi Code Annotated section 15 — 1— 36. Howell was injured when she was in the process of receiving an x-ray for the purpose of treatment and diagnosis, and the technician was the one preparing her for the x-ray. It is further likely that expert testimony would be needed to establish whether the technologist performing the x-ray breached the appropriate standard of care for performing x-ray exams. The act or omission, here performing the x-ray, involved assessment of the patient’s condition, in that the x-ray was necessary to determine or diagnose Howell’s condition. Again, Howell was admitted to Garden Park in order to have tests and x-rays done for a proper diagnosis. Therefore, Howell’s fall from the x-ray table was within the scope of activities Garden Park was licensed to perform. Howell’s injury would not have occurred had she not sought diagnosis and treatment, as the fall occurred as she was preparing to undergo an x-ray procedure. Finally, none of the acts of alleged negligence were intentional in nature.
 

 ¶ 9. In the case at bar, Howell alleges that the negligent actions by Garden Park’s staff in operating and maintaining the x-ray equipment was a direct cause of the injury she suffered. This Court finds two Louisiana cases instructional,
 
 Dominick v. Rehabilitation Hospital of New Orleans,
 
 714 So.2d 739, 741-42 (La.Ct.App. 1998) and
 
 Harris v. Sternberg,
 
 819 So.2d 1134, 1138-39 (La.Ct.App.2002), both of which applied the
 
 Coleman
 
 factors. In each case, after applying the six factors, the actions were found to involve medical malpractice because the injury to both plaintiffs occurred during the rendition of medical or health-care services. In
 
 Dominick,
 
 the plaintiff, during therapy, was walking under the supervision of a therapist with the aid of a walker when she slipped on the floor and injured herself. 714 So.2d at 740. The plaintiff alleged that the defendant failed to issue a sufficient size walker and failed to instruct her properly on its use; thus, there existed a significant relationship between her fall and the conduct of the defendant.
 
 Id.
 
 The court found that the conduct of the defendant fell within the Medical Malpractice Act because the injury occurred while she was actively receiving physical therapy treatment.
 
 Id.
 
 at 741-42.
 

 ¶ 10. Additionally, in
 
 Harris,
 
 the plaintiff was receiving treatment for morbid obesity and was ordered by a medical nursing assistant to step onto a scale in order to be weighed as part of the treatment process. 819 So.2d at 1136. As the plaintiff stepped onto the scale, the scale began moving, causing him to lose his balance and fall to the floor, resulting in injury.
 
 Id.
 
 Testimony revealed that the patient’s weight was a critical factor in evaluating and treating his morbid obesity.
 
 Id.
 
 at 1138. The question at issue was “whether an act of negligence by a doctor or his staff falls under the auspices of the Medical Malpractice Act, or is an act of general negligence not covered by the Act.”
 
 Id.
 
 at 1138-39. The court concluded that since the petition filed by the patient included allegations that the doctor and his nursing assistants acted negligently in their use and operation of the scale and not that the scale itself was defective, the claim fell under the Medical Malpractice Act.
 
 Id.
 
 at 1139.
 

 ¶ 11. Garden Park cites to pertinent case law in several other states, some of which this Court finds persuasive. A Florida case involved a patient who was injured while receiving physical therapy.
 
 Corbo v. Garcia,
 
 949 So.2d 366, 368 (Fla.
 
 *905
 
 Dist.Ct.App.2007). The medical staff “ ‘connected a machine to [Garcia’s] arms, which provided electrical stimulation’ that caused ‘burns to both her arms.’ ”
 
 Id.
 
 The court in that case concluded that instead of being simple negligence, “[t]he fact that injury was caused by the use of the equipment during the rendering of medical treatment [took] Garcia’s claim into the realm of a medical negligence claim.”
 
 Id.
 
 at 370.
 

 ¶ 12. In
 
 Bellamy v. Appellate Department,
 
 the plaintiff was injured when she fell off an x-ray table while “either in preparation for, during, or after an [x]-ray exam or treatment.” 50 Cal.App.4th 797, 805, 57 Cal.Rptr.2d 894 (Cal.Ct.App.1996). The main issue was whether the injury should be classified as ordinary negligence or professional negligence. In its analysis, the court recognized it is “whether the injuries arose out of the rendering of professional services that determine whether professional as opposed to ordinary negligence applies.”
 
 Id.
 
 at 804, 57 Cal.Rptr.2d 894 (citation omitted). The test in California, which is similar to Louisiana’s test, is “whether the negligent act occurred in the rendering of services for which the health[-]care provider is licensed.”
 
 Id.
 
 at 806, 57 Cal.Rptr.2d 894 (citations omitted). The court concluded that the plaintiff “sufficiently allege[d] facts amounting to professional negligence.”
 
 Id.
 
 at 809, 57 Cal.Rptr.2d 894.
 

 ¶ 13. In light of the record before this Court, we agree that the injury to Howell occurred while Garden Park was performing a medical, professional, or surgical service, i.e., performing an x-ray procedure on Howell. As such, the cause of action has a two-year statute of limitations that expired before suit was filed in this case. This Court will not overturn a trial court’s grant of a motion to dismiss on appeal unless it is manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. This issue is without merit.
 

 ¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.